## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:06-cr-99 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| JAMES JOHNSON, | : | |
| | : | |
| Defendant. | : | |

---

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (Doc. 115)

---

This case is before the Court on Defendant James Johnson's Motion for Compassionate Release (Doc. 115) and the related responsive memoranda (Docs. 119, 123, 128, & 129). Mr. Johnson requests that the Court grant him compassionate release from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In the alternative, should the Court deny that request, Mr. Johnson asks that the Court make a judicial recommendation of home confinement to the Bureau of Prisons ("BOP") pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), the Second Chance Act of 2007, and 18 U.S.C. § 3621. The United States opposes Defendant's Motion, arguing that compassionate release is not warranted in this case. For the reasons below, Mr. Johnson's Motion for Compassionate Release (Doc. 115) is **DENIED**.

### FACTS

Mr. Johnson is currently serving time on a 36-month sentence for a supervised release violation. His current sentence dates back to 2006 when he pled guilty to one

count of conspiracy to commit bank fraud. Although his sentencing guideline range was 18 to 24 months, Mr. Johnson was sentenced to serve just one day in custody followed by a three-year term of supervised release. Two mandatory conditions of his release were that he could "not possess a firearm" nor "commit another federal, state, or local crime." (Doc. 126.)

After serving his day in jail, Mr. Johnson began his three-year term of supervised release on March 27, 2007. For the first fifteen months, his adjustment was satisfactory: he successfully completed outpatient substance abuse counseling, secured full-time employment, and enrolled in engineering classes at Cincinnati State. But in June 2008, Mr. Johnson attempted a robbery while brandishing a .40 caliber Smith & Wesson semiautomatic handgun. The gun was discharged and the victim was shot dead. Mr. Johnson was arrested and subsequently indicted by a state court grand jury for (1) aggravated murder, (2) voluntary manslaughter, and (3) aggravated robbery. Mr. Johnson eventually pled guilty to the voluntary manslaughter and aggravated robbery charges, the aggravated murder charge was dropped, and he was sentenced to twelve years in the Ohio Department of Corrections.

Upon conclusion of the state court proceeding, Mr. Johnson was brought before Judge S. Arthur Spiegel in federal court for violating his terms of supervised release. Although Mr. Johnson's guideline imprisonment range was 15 to 21 months, the Probation Department recommended that he be sentenced to 36 months, to run consecutive to his state court sentence. Mr. Johnson argued that his twelve-year state court sentence was punishment enough and that anything further would be

2

unnecessary and inappropriate considering the factors under § 3553(a). (Doc. 100 at p. 7.) He also requested that the court order his sentence to run concurrent with his twelve-year state court sentence.

Judge Spiegel disagreed. He noted that Mr. Johnson had received "quite a break" in state court when the aggravated murder charge was dismissed, and that his sentence of twelve years was significantly less than what would ordinarily occur as a result of a crime of that nature. (*Id.* at p. 10.) Judge Spiegel also recognized that Mr. Johnson received a break in his sentence for the underlying federal offense. In the court's eyes, Mr. Johnson was under certain conditions as a result of his federal conviction, he did not abide by those conditions, and "as soon as the pressure was off [,] . . . he committed the crime" of aggravated burglary and involuntary manslaughter. (*Id.*) Accordingly, the court sentenced Mr. Johnson to a 36-month term of imprisonment, to run consecutive to his state court sentence.

Mr. Johnson has since completed his twelve-year state court sentence and is now serving time on his 36-month federal sentence. He has roughly 22 months remaining. Mr. Johnson, who has asthma, is now requesting that the Court grant him compassionate release since he is at a higher risk of severe illness should he contract COVID-19.

## LAW

"Generally speaking, once a court has imposed a sentence, it does not have authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013) (internal

citations omitted). One such statutory exception is the "compassionate release" provision of 18 U.S.C. § 3582, which allows district courts to reduce an incarcerated defendant's sentence under "extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A). However, for the first 34 years of § 3582's existence, only the Bureau of Prisons could file motions for compassionate release—a power they seldom wielded. *United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020). So, in 2018, President Trump signed the First Step Act, which amended § 3582(c)(1)(A) in order to expand the use of compassionate release. *Id.* at 1104-1105. Now, thanks to the First Step Act, imprisoned defendants are permitted to file motions for compassionate release on their own behalf. 18 U.S.C. § 3582(c)(1)(A) (2020).

Prior to filing a compassionate release motion, imprisoned defendants must first satisfy the exhaustion requirement of § 3582. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). Once a defendant has done so, district courts have substantial discretion in determining whether to grant compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). To help guide this analysis, the Sixth Circuit has established a three-step test. *Id.* at 1004-1005 (*citing* 18 U.S.C. § 3582(c)(1)(A)); *see also Jones*, 980 F.3d at 1107-1108. First, the court must find that "extraordinary and compelling reasons" warrant the sentence reduction. *Id.* Second, the court must ensure that the reduction is consistent with applicable policy statements issued by the Sentencing Commission.[1] *Id.* Third, the court must consider all relevant

---

[1] While courts in this district previously considered the policy statement in U.S.S.G. § 1B1.13 as part of its analysis of motions for compassionate release, the recent precedent set in *Jones* established that § 1B1.13 no longer governs motions initiated by imprisoned persons. *Jones*, 980 F.3d at 1108 (Moore, J.); *see also,*

sentencing factors listed in 18 U.S.C. § 3553(a). *Id.* While a district court must address

all relevant steps when granting a compassionate release motion, the Sixth Circuit

recently clarified that district courts may deny compassionate release when any of the

three steps are "lacking and do not need to address the others." *United States v. Lisa M.*

*Elias*, No. 20-3654, slip. op. (6th Cir. Jan. 6, 2021).

## ANALYSIS

### I.    Compassionate Release

The government concedes that Mr. Johnson has exhausted his administrative

remedies and has established an "extraordinary and compelling reason" allowing

compassionate release:  Mr. Johnson has asthma, which puts him at an increased risk of

severe illness if he were to contract COVID-19.  The only remaining question, therefore,

is whether the applicable Section 3553(a) factors support compassionate release.  These

factors include, among others, "the nature and circumstances of the offense," the

"history and characteristics of the defendant," the "need to avoid unwarranted sentence

disparities," and the "need for the sentence imposed."  18 U.S.C. § 3553(a).

While Mr. Johnson acknowledges the serious nature of his offense, he argues that

he has already served enough time to satisfy the purposes of sentencing and has

become a different person while doing so.  During his state court imprisonment, Mr.

---

*e.g., United States v. Coates*, 2020 WL 7640058, at *2 (E.D. Mich. Dec. 23, 2020).  As such, the Sixth Circuit held that "[i]n cases where incarcerated persons file motions for compassionate release," as is the case here, "federal judges may skip step two of the § 3582(c)(1)(A) inquiry" and proceed directly from step one to step three.  *Jones*, 980 F.3d at 1111.  The Sixth Circuit reaffirmed the *Jones* holding even more recently in *United States v. Lisa M. Elias*, No. 20-3654, slip. op. (6th Cir. Jan. 6, 2021) (McKeague, J.) and *United States v. Hampton*, No. 20-3649, slip. op. (6th Cir. Jan. 19, 2021) (Readler, J.).

Johnson completed reentry courses and classes in both mental health and financial planning, earned credits towards his college degree, worked for Ohio Penal Industries, and earned community service hours through a carpenter trade program. In addition, Mr. Johnson asserts that he has substantial family support that will help him stay on track once he is released. If released, Mr. Johnson plans to reside with his fiancé and two sons and will work full time at a construction company his brother owns. In sum, Mr. Johnson contends that the sentencing factors in § 3553(a) support compassionate release because of his "vulnerability to COVID-19, self-improvement in prison, strong family support, and the sufficient punishment he has already endured." (Doc. 119.)

The Court commends Mr. Johnson. His self-growth during imprisonment is apparent from his completed education work. And his plan to help raise his kids and work for his brother's company will be essential to his successful reintegration into the community when ultimately released. These factors, however, even when coupled with his increased medical risk from COVID-19, do not warrant compassionate release from the remaining 22 months of his sentence.

As the Government correctly contends, the statutory sentencing factors under § 3553(a) weigh strongly against granting compassionate release. First, the nature and circumstances of his offense are severe. While already on supervised release for bank fraud, Mr. Johnson attempted a robbery while brandishing a weapon. He then discharged the weapon and killed the victim. As Judge Spiegel noted during his 2008 sentencing hearing, this conduct was "as serious a crime that can be committed . . ." (Doc. 100 at p. 10.) Mr. Johnson, however, cites *United States v. Goins*, No. 11-CR-20376,

6

2020 WL 3064452, at *1 (E.D. Mich. June 9, 2020) and argues that the serious nature of his offense should not act as a barrier to compassionate release. But the Court does not find *Goins* applicable. The defendant in *Goins* pled guilty to (1) possessing heroin with intent to distribute and (2) using and carrying a firearm during and in relation to a drug trafficking offense. *Id*. Simply put, dealing drugs while in possession of a firearm is not nearly as violent of a crime as robbing someone at gun point and then shooting them dead. Mr. Johnson has already committed violent crimes while on supervised release, and his record during imprisonment, while commendable, does not eliminate the well-founded concern that he could present a danger to the community. Based on this factor alone, Mr. Johnson's motion for compassionate release warrants denial.

Nevertheless, the second factor listed in § 3553(a) also weighs heavily in favor of denial: "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [ ] to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2)(A)-(C). While Mr. Johnson argues that his twelve-year state court sentence was "sufficient to deter him from committing future offenses and to achieve general deterrence," the Court disagrees. (Doc. 119.) Mr. Johnson is essentially rearguing the same points Judge Spiegel dismissed during his 2008 sentencing hearing. And Judge Spiegel's rationale is equally applicable today as it was in 2008. As discussed above, Judge Spiegel stated that Mr. Johnson's twelve-year sentence was "a lot less than what ordinarily would be imposed for the kind of crime committed here, a violent crime of robbery with brandishing a weapon where

7

somebody was killed," and that Mr. Johnson actually "got quite a break." (Doc. 100 at

p. 10.) Moreover, Mr. Johnson had undoubtedly already caught a previous break when

this Court sentenced him to just one day for his underlying bank fraud offense. But as

the Government notes, this "previous favorable sentence did not serve to deter him

from committing dangerous crimes." (Doc. 123.) In fact, Mr. Johnson's supervised

release violation caused Judge Spiegel to state that, even though "he was under certain

conditions [,] . . . as soon as the pressure was off . . . he committed the crime" of armed

robbery and involuntary manslaughter. (Doc. 100 at p. 10.)

In other words, even though Mr. Johnson received a lenient sentence for bank

fraud, he was still undeterred from committing a violent crime, for which he then

received an additional lenient sentence. This is why Judge Spiegel sentenced Mr.

Johnson to 36-months in the first place. The remaining 22 months of Mr. Johnson's

sentence is thus necessary to "reflect the seriousness of the offense," "promote respect

for the law," "provide just punishment for the offense," "afford adequate deterrence to

criminal conduct," and to "protect the public from further crimes of the defendant." 18

U.S.C. § 3553(a)(2)(A)-(C).

## II.    Judicial Recommendation to Bureau of Prisons

Alternatively, Mr. Johnson asks that the Court make a judicial recommendation

to the Bureau of Prisons that he be transferred to home confinement to serve the

remainder of his sentence.

Due to the outbreak of the COVID-19 pandemic, Attorney General Barr issued a

memorandum on March 26, 2020, directing the Bureau of Prisons to prioritize the use of

8

existing statutory authorities to transfer to home confinement at-risk inmates who are non-violent and pose minimal likelihood of recidivism.[2] Congress then passed the CARES Act, which expanded the Bureau of Prisons' authority to transfer inmates to home confinement. This authority was then further expanded on April 3, 2020 when Attorney General Barr made the finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons.[3] Since then, several courts have made recommendations to the Bureau of Prisons that it should consider home detention placement due to the COVID-19 pandemic. (*See* Doc. 119 at p. 19-21, collecting cases.)

Such action is not warranted here. Attorney General Barr's March 26, 2020 Memorandum makes clear that the prioritization of transfer to home confinement due to COVID-19 is directed at "at-risk inmates who are non-violent and pose minimal likelihood of recidivism." *Supra*, fn. 3. Although Mr. Johnson has asthma, and is thus an "at-risk inmate," Mr. Johnson has a history of committing violent offenses while already on supervised release. Accordingly, the Court will not issue a judicial recommendation of home confinement since Mr. Johnson is a violent offender who poses a substantial risk of recidivism.

---

[2] Memorandum from Attorney General to Director of Bureau of Prisons (March 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. ("Attorney General Barr's March 26, 2020 Memorandum.")

[3] Memorandum from Attorney General to Director of Bureau of Prisons (April 3, 2020), https://www.justice.gov/file/1266661/download.

## CONCLUSION

In sum, the § 3553(a) factors weigh heavily against compassionate release in this case. Mr. Johnson committed a heinously violent crime while already on supervised release yet received a relatively light sentence. For the reasons above, Mr. Johnson must serve the rest of his roughly 22-month sentence in order to "reflect the seriousness of the offense . . . provide just punishment . . . afford adequate deterrence . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). Accordingly, Mr. Johnson's Motion for Compassionate Release (Doc. 115) is therefore **DENIED**.

   **IT IS SO ORDERED.**

                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF OHIO

                    By: _____
                              JUDGE MATTHEW W. McFARLAND